**CERTIFICATE OF INTERESTED PARTIES**

*Bran D. Swanson v. Commissioner of Internal Revenue,* Case No. 24-11846

Pursuant to 11th Circuit Rule 26.1-1, Appellant Brian D. Swanson furnishes a

complete list of the following:

1.  Marjorie A. Robinson, Chief Counsel, Internal Revenue Service

2.  Francesca Ugolini, U.S. DOJ, Chief Appellate Section

3.  Paul A. Allulis, U.S. DOJ, Tax Div., Appellate Section

4.  Michael J. Haungs, co-counsel, Internal Revenue Service

5.  Clifford E. Howie, Attorney, Internal Revenue Service

6.  Honorable David Gustafson, Senior Judge United States Tax Court

1

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

| | |
|---|---|
| BRIAN D. SWANSON | ) |
| | ) |
| Plaintiff-Appellant | ) |
| | ) |
| v. | ) No. 24-11846 |
| | ) |
| Commissioner of Internal Revenue | ) |
| | ) |
| Defendant-Appellee | ) |

**APPELLANT'S OPPOSITION TO COMMISSIONER'S MOTION FOR
SUMMARY AFFIRMANCE**

**ARGUMENT**

Appellant, Brian D. Swanson, respectfully requests that the Commissioner's motion for summary affirmance be denied. The Commissioner's computation of Mr. Swanson's income tax deficiency is not correct as a matter of law and must be recomputed in accordance with the exclusions and deductions in Subtitle A of the Tax Code. In addition, it is probable that the income tax is in violation of the Uniformity Clause of the Constitution after the Supreme Court recently held in *Moore et ux v. United States*, 144 S. Ct. 1680 (2024), that income taxes are indirect taxes and subject to the Uniformity Clause. Thus, the Commissioner's position is not clearly right as a matter of law and the outcome the case remains in doubt.

2

**I.      The Tax Court computed Mr. Swanson's deficiency using income that is excluded by law from gross income.**

The Commissioner is obligated to ensure that the Notice of Deficiency is legally correct and is not arbitrary or capricious. *City Line Candy & Tobacco Corp. v. Commissioner*, 141 T.C. 414, 420 (2013). The Commissioner computed Mr. Swanson's income tax deficiency of $15,648 as shown in the Notice of Deficiency using chapter 24 income in the amount of $81,496 as defined in I.R.C. § 3401(a). This income is excluded by law from gross income and thus, the Commissioner's computation is wrong as a matter of law and must be corrected using the statutes from Subtitle A.

Both the Commissioner and the Tax Court are confusing the employment taxes in Subtitle C with the income tax in Subtitle A. Both make the legal error of swapping income between subtitles without any statutory authority and both are using the wrong income to compute the income tax in Subtitle A, chapter 1.

The Commissioner acknowledges on page 10 of his motion that Mr. Swanson earned $87,500 as compensation for his teaching services. This dollar figure is not reported to the Commissioner and it does not appear on Mr. Swanson's Form W-2. Mr. Swanson provided this figure to challenge the Notice of Deficiency's presumption of correctness and to shift the burden of proof to the

3

Commissioner in accordance with I.R.C. § 7491(a) because his determination is arbitrary and capricious. *City Line Candy & Tobacco Corp. v. Commissioner* The Commissioner computed the deficiency using income that is not relevant to the income tax imposed in Subtitle A, but the Tax Court denied Mr. Swanson's motion to shift the burden of proof.

The W-2 reports "wages" defined in § 3401(a)[1], and it also reports "wages" as defined in § 3121(a).[2] These "wages" are defined in Subtitle C and this income is used exclusively for purposes of employment tax, and not for income tax in Subtitle A. The Form W-2 shows how much of Mr. Swanson's $87,500 is subject to the employment tax imposed in chapter 21 and the employment tax imposed in chapter 24. The Form W-2 does not show how much he earned in 2019 and it does not show how much of his $87,500 is subject to the income tax in chapter 1. The Form W-2 is used by the employer to prove that the employer has satisfied all the requirements of the Subtitle C employment tax, but it does not provide any information relevant to Mr. Swanson's Subtitle A income tax. These dollar values are legally restricted to Subtitle C and may not be used to compute income tax in Subtitle A. The Tax Court should have granted the motion to shift the burden of proof in accordance with I.R.C. § 7491(a).

---

[1] IRC § 6051(a)(3)
[2] IRC § 6051(a)(5)

For tax year 2019, Mr. Swanson was paid $87,500.55 from McDuffie County Board of Education as shown on his December 2019 Earnings Statement.

In chapter 24, the definition of "wages" is found in § 3401(a) and reads as follows:

> ***For purposes of this chapter***, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash

"For purposes of this chapter" is a caveat that cannot be ignored. When analyzing any law or any statute, does this language limit what follows to the chapter in question? In this case, is this definition of income limited to chapter 24? Mr. Swanson believes that it is. Mr. Swanson's real-world wages from McDuffie County are $87,500.55. But for purposes of chapter 24, they were reduced to statutory "wages" of $81,496.95. This dollar figure is a legal abstraction that is created in chapter 24 using the exclusions and deductions applicable to chapter 24. $81,496 only exists in chapter 24 and this income cannot be used to determine the meaning of "gross income" in chapter 1.

In addition, Subtitle A prohibits income as defined in other chapters of the Tax Code to determine the meaning of "gross income." In I.R.C. §61(a), the first ten words of this statute read, "Except as otherwise provided in this subtitle gross income

5

means …" When analyzing any law or any statute, does this language exclude everything outside of "this subtitle" from the meaning of what follows? In this case, is Subtitle C income excluded from "gross income" in Subtitle A? Mr. Swanson believes that it is. I.R.C. § 3401(a) is found in Subtitle C and is outside of "this subtitle." We are told in 26 C.F.R. § 1.61-1 that, "Gross income means all income from whatever source derived, ***unless excluded by law***," and § 61(a) excludes income from Subtitle C, in the amount of $81,496.95, from "gross income" by law. Subtitle C income is excluded by law from "gross income," and so are Subtitle C exclusions and deductions because they are all outside of "this subtitle." The meaning of "gross income" must be derived exclusively from statutes in Subtitle A.

Income is the subject of the employment taxes in Subtitle C and income is also the subject of the income tax in Subtitle A. However, each subtitle defines income using different language and imposes their respective taxes according to different rules and restrictions. Both the Commissioner and the Tax Court make the error of assuming that because "wages" are income, that these "wages" may be used arbitrarily and capriciously in any chapter of the Tax Code. The Commissioner believes that by simply labeling a dollar figure "income" that the statutes may be swapped between the subtitles and that income from one chapter may be used arbitrarily in another chapter. The Commissioner is using the label "income" to ignore statutory restrictions imposed on the income. Mr. Swanson

6

believes that swapping income between subtitles is an error. Both § 61(a) and § 3401(a) forbid the use of chapter 24 income in chapter 1, and thus, the Commissioner has multiplied his error by violating both requirements simultaneously. The label does not override the statues simply because "wages" are income.

I.R.C. § 1402(d) illustrates how to use income that is legally defined for purposes of a different chapter. The tax imposed in chapter 2 borrows the meaning of "wages" and "employee" form chapter 21 and imposes a tax based on these definitions. This statute reads:

> **(d)EMPLOYEE AND WAGES**
> The term "employee" and the term "wages" shall have the same meaning as when used in chapter 21 (sec. 3101 and following, relating to Federal Insurance Contributions Act).

I.R.C. § 1401(a) then imposes a 12.4% tax on self-employment income, which includes these "wages" as defined in chapter 21. This is permissible because the chapter 2 statute specifically authorizes the use of income outside of Subtitle A. Chapter 1 requires an equivalent statutory authorization to include chapter 24 "wages" in "gross income." However, no explicit statutory authorization can be found in chapter 1. In fact, § 61(a) specifically forbids income from outside of Subtitle A to determine the meaning of "gross income."

On page 6 his motion, the Commissioner quotes the Tax Court decision which states that, "wages were 'compensation for [his teaching] service' – plainly included in his 'gross income' subject to income tax." To which wages does the Court refer? The Court plays a word game with the meaning of real-world wages and statutory "wages." According to Mr. Swanson's W-2, he was paid "wages" of $86,733.51 and he was also paid "wages" of $81,496.95. However, he provided evidence that he was paid wages in the amount of $87,500.55. Does the Tax Court refer to "wages" for purposes of chapter 21, "wages" for purposes of chapter 24, gross wages paid by his employer or does it refer to wages for purposes of chapter 1, which is a dollar value that remains undiscovered? What is the dollar value of his wages (or his "wages") that must be included in his gross income? Does the Court refer to statutory "wages" or real-world wages? Its judgment is ambiguous.

Which statute tells the Commissioner to compute income tax using chapter 24 "wages" instead of other wages: Wouldn't choosing chapter 21 "wages" result in more revenue for the government? There is no statutory authority to choose one over the other because there is no statutory authority to choose any "wages" from Subtitle C – the Commissioner's deficiency is based on a wild guess. The only authority to use chapter 24 "wages" to compute "gross income" comes from IRS administrative procedure found in the Form 1040 instruction booklet,[3] where

---

[3] 2019 IRS Form 1040 Instructions, p. 21: https://www.irs.gov/pub/irs-prior/i1040gi--2019.pdf

taxpayers are told to use block 1 of their Form W-2s to determine "gross income." This IRS instruction is a violation of the statues in § 61(a) and § 3401(a).

The statues in Subtitle A will determine how much of Mr. Swanson's $87,500.55 salary must be included in "gross income" on line 1 of the Form 1040, not the statutes in Subtitle C. Employment tax statutes cannot be freely substituted for income tax statutes. As in chapters 21 and 24, this dollar value will be reduced to a lesser taxable amount to be reported on the Form 1040 that will be unique to chapter 1. This question must be answered in chapter 1, and not in chapter 24. The exclusions and deductions applicable to chapter 1 must be applied to this salary, not the exclusions and deductions from chapter 24. Unfortunately, this unique dollar figure is not reported on any form and must be manually computed for each taxpayer. Thus, the true value of wages needed to compute the alleged deficiency remains a mystery, but it could range anywhere from $87,500.55 to $0 depending on the requirements for Subtitle A. The Commissioner used income from chapter 24 in the amount of $81,496.95 to compute Mr. Swanson's income tax deficiency of $15,648.00, but this income includes chapter 24 exclusions and deductions. This computation is wrong as a matter of law.

The Commissioner refuted some of Mr. Swanson's claims that "one will not find these deductions to 'gross income' in Subtitle A," (Motion at 11) but he did not

prove that Subtitle A exclusions and deductions are legally and mathematically equivalent to Subtitle C exclusions and deductions; he did not prove that "wages" as defined in § 3401(a) may be arbitrarily and capriciously plucked out of chapter 24 and used to compute income tax in chapter 1; and he did not prove that $81,496 is the correct dollar value to compute Mr. Swanson's alleged deficiency. Mr. Swanson is a military retiree and is covered under military Tricare and so he does not have an employee health plan under § 106(a); he does not have a cafeteria plan under § 125(a); and he is not involved with any trust under § 401(a). While some of the exclusions and deduction found in Subtitle A may be similar to the exclusions and deductions in Subtitle C, the Commissioner did not prove that they are exactly the same or that he applied Subtitle A statutes to obtain $81,496.00. The Commissioner must prove that the dollar value used to compute the deficiency is derived exclusively from statutes in Subtitle A and that the figure is legally correct, "in case of doubt, [statutes] are construed most strongly against the government and in favor of the citizen." *Gould v. Gould,* 245 U.S. 151 (1917) It is highly doubtful that Subtitle C statutes are to be used to compute income tax in Subtitle A.

The Tax Court acknowledged the possibility of error on the NOD on page 17 of its bench decision: "Even if the NOD (like the Form W-2 on which is was based) was incorrect in understating Mr. Swanson's compensation amount as $81,496, that would simply constitute an error on the NOD." An error is all Mr. Swanson needs to

prove as the Tax Court admitted on page 9, "Generally, the Commissioner's determination of a deficiency is presumed correct and the taxpayer has the burden of proving it wrong." The Tax Court acknowledges that there could be an error on the NOD, but leaves the question hanging and does not answer it: Computing the deficiency using $81,495 is an error that must be corrected. Since chapter 24 deductions are only applicable to the chapter 24 employment tax, the NOD is erroneous. If the computation of the deficiency using $81,496 is wrong as a matter of law, then Mr. Swanson has met his burden to prove error. Mr. Swanson believes that when Subtitle A exclusion and deduction are properly applied to his salary of $87,500.55 that he will owe less tax. However, he accepts the possibility that he may owe more tax, but whether he owes more tax or less tax is irrelevant. If the Notice is in error, then Mr. Swanson is not liable for an I.R.C. § 6673 penalty in the amount of $15,000 and the Tax Court has abused its discretion. If there is even a slight possibility that there is an error on the NOD, then summary affirmance is not appropriate.

The accuracy of the Commissioner's Notice of Deficiency is at issue in this appeal, not the accuracy of Mr. Swanson's original 2019 Form 1040. Mr. Swanson's errors computing his liability and litigating his arguments can be traced to the Commissioner's erroneous instructions and computations: Instructing taxpayers to use block 1 of the Form W-2 to compute income tax has always been

wrong and this error is contributing to the misunderstanding of the tax. Mr. Swanson conceded during trial that his original computation is erroneous as the Tax Court acknowledged on page 18 of its decision, "He was unable to propose a calculation of his taxable income from teaching under his theory of the Code, but he did propose that it was not (as he had reported) zero." The correct calculation of taxable income will include the exclusions and deductions from Subtitle A, not the exclusions and deductions from Subtitle C. In this appeal, Mr. Swanson has the burden to prove error, not to compute the correct amount of tax. *Helvering v. Taylor*, 293 U.S. 507, 514-515 (1935). Nobody will learn how to correctly apply Subtitle A exclusions and deductions as long as the Commissioner is instructing taxpayers to compute their income tax using Subtitle C exclusions and deductions in the form of "wages" as defined in § 3401(a) and found in block 1 of the Form W-2.

The Commissioner's computation of Mr. Swanson's income tax deficiency in the amount of $15,648.00 is wrong as a matter of law, and the Notice of Deficiency should be remanded back to the Tax Court to redetermine the deficiency in accordance with the exclusions and deductions in Subtitle A. Summary affirmance should be denied.

## II.    If Puerto Rico has become an incorporated Territory, then the income tax is in violation of the Uniformity Clause

Puerto Rico became an "incorporated" Territory on July 3, 1952 when Congress approved its constitution.[4] Since that date, it has been fully subject to the Constitution, including the Uniformity Clause when collecting income taxes. The rules for collecting the income tax changed on July 3, 1952, and the failure to recognize this change has spawned a costly injustice: American citizens may flee to Puerto Rico to evade their responsibility to pay income taxes.

Two recent Supreme Court decisions have opened the door to challenge Puerto Rico's status as an unincorporated Territory: *United States v. Vaello Madero*, 596 U.S. __ (2022) and *Moore et ux v. United States*, 144 S. Ct. 1680 (2024).

*Vaello Madero* was not about income tax, but SSI benefits and it was held that "The Constitution does not require Congress to extend SSI benefits to the residents of Puerto Rico." But, it was the income tax that provided the rational basis for denying SSI benefits where it was further held that:

> Congress's decision to exempt Puerto Rico's residents from most federal income, gift, estate and excise taxes supplies the rational basis for likewise distinguishing residents of Puerto Rico from residents of the States for purposes of the SSI benefits program

---

[4] Public Law 82-447, 66 Stat. 327

13

Mr. Swanson is challenging the rational basis upon which this decision was decided: Residents of Puerto Rico should be paying federal income tax and residents of Puerto Rico should be receiving SSI and other benefits. According to Justice Gorsuch's concurring opinion, this holding is based on the "shared premise" of both sides that Puerto Rico is an "'unincorporated' Territory," and Mr. Swanson is disputing that shared premise in this appeal. Congress may not exempt Puerto Rico's residents from federal income tax if Puerto Rico has become an incorporated Territory.

Puerto Rico has been considered an unincorporated Territory ever since it was acquired during the Spanish-American War in 1898 and after its status was determined in a series of cases known as the Insular Cases. In *Downes v. Bidwell,* 182, U.S. 244 (1901) the Court said that acquisition by treaty does not incorporate a territory:

> So long as Congress has not incorporated the territory into the United States, neither military occupation nor cession by treaty makes the conquered territory domestic territory in the sense of the revenue laws. But those laws concerning "foreign countries" remain applicable to the conquered territory until changed by Congress.

> We are therefore of opinion that the Island of Porto Rico is a territory appurtenant and belonging to the United States, but not part of the United States within the revenue clauses of the Constitution.

Puerto Rico was excluded from the revenue clauses of the Constitution because of its status as an unincorporated Territory, not because of the Territory Clause.

14

*Boumedienne v. Bush,* 553 U.S. 753, 757 (2008) ("These considerations resulted in the doctrine of territorial incorporation, under which the Constitution applies in full in incorporated Territories surely destined for statehood but only in part in unincorporated Territories.") When the Constitution applies in full, it includes the full application of the Uniformity Clause.

The Income Tax was not in force when these cases were decided and so the effect of creating a domestic tax haven, where some American citizens must pay a tax while other American citizens do not – or worse, can flee to Puerto Rico to evade the tax – did not influence these decisions. The Uniformity Clause exists specifically to prevent this injustice from occurring in the first place.

The exact criteria for an unincorporated Territory to transition to an incorporated Territory has not been explicitly determined. In fact, the Court itself admitted that its decisions have not been "altogether harmonious" regarding the theory of incorporation. *See Downs.* One formulation the Supreme Court has frequently used is that an incorporated territory is one that is "surely destined for statehood." *Boumediene,* 553 U.S. at 757, while an unincorporated Territory is not destined for statehood. *See United States v. Verdugo-Urquidez,* 494 U.S. 259, 268 (1990) (an "unincorporated territory" is one "not clearly destined for statehood"). The Court has provided few criteria to aid in this analysis. In *Balzac v. Porto Rico,* it said:

15

[B]ut in these latter days, incorporation is not to be assumed without express declaration or an implication so strong as to exclude any other view.

Congress has made two decisions that may qualify as an "express declaration" or an "implication so strong as to exclude any other view."

First, Congress approved Puerto Rico's constitution on July 3, 1952. By this act Congress expressly declared that Puerto Rico's treaty relationship with the United States had ended and its constitutional relationship had begun. Puerto Rico became part of our constitutional system. Therefore, Puerto Rico is now domestic territory within the revenue clauses of the Constitution.

Second, Congress submitted numerous bills to consider statehood for Puerto Rico, with the most recent being H.R. 1522 on March 2, 2021. An unincorporated Territory cannot become a state, and so introducing bill in Congress to consider statehood for a territory is evidence that *it is surely destined for statehood* and that the territory has crossed the threshold for incorporation.

In his concurring opinion in *United States v. Vaello Madero*, Justice Gorsuch noted the injustice of the theory of incorporation:

> The flaws in the Insular Cases are as fundamental as they are shameful. Nothing in the Constitution speaks of "incorporated" and "unincorporated" Territories. Nothing in it extends to the latter only certain supposedly "fundamental" constitutional guarantees. Nothing in it authorizes judges to engage in the sordid business of segregating Territories and the people who live in them on the basis of race, ethnicity, or religion.

16

If the whole idea of incorporated and unincorporated Territories is flawed from the start, then Puerto Rico should have never been excluded from the revenue clauses of the Constitution and the rule of uniformity should have always applied to Puerto Rico when collecting the federal income tax. Justice Gorsuch laments that there is no reasonable explanation why three million American Citizens in Puerto Rico are not protected by the Constitution:

> Still today under this Court's cases we are asked to believe that the right to a trial by jury remains insufficiently "fundamental" to apply to some 3 million U. S. citizens in "unincorporated" Puerto Rico. At the same time, the full panoply of constitutional rights apparently applies on the Palmyra Atoll, an uninhabited patch of land in the Pacific Ocean, because it represents our Nation's only remaining "incorporated" Territory. It is an implausible and embarrassing state of affairs.

Mr. Swanson argues that even if Puerto Rico has not crossed the threshold to become an incorporated Territory, as alleged in this appeal, the uniform application of income tax laws is sufficiently "fundamental" to apply to "unincorporated" Puerto Rico. Justice Gorsuch is looking for an appropriate case to overturn these flawed decisions:

> All that may obviate the necessity of overruling the Insular Cases today. But it should not obscure what we know to be true about their errors, and in an appropriate case I hope the Court will soon recognize that the Constitution's application should never turn on a governmental concession or the misguided framework of the Insular Cases.

17

Appellant believes that using the income tax to revisit the flawed theory of incorporation makes this "an appropriate case" to restore the fundamental constitutional guarantee of the uniform application of the tax laws.

The Territory Clause of the Constitution has been often cited as the authority for the differing tax policies in the Territories. (Motion at 16) This view is flawed. The Territory Clause grants to Congress the power to make "needful rules" for the Territories, but it does not amend Congress's powers of taxation, and it does not "specifically authorize Congress to treat Puerto Rico differently for tax and other purposes." (Motion at 16) All taxes enacted by Congress must be collected by either the rule of apportionment or the rule of uniformity. Congress has no other power of taxation. The High Court observed in *Loughborough v. Blake* 18 U.S. 5 Wheat. 371 317 (1820):

> The power then to lay and collect duties, imposts, and excises may be exercised and must be exercised throughout the United States. Does this term designate the whole, or any particular portion of the American empire? Certainly this question can admit of but one answer. It is the name given to our great republic, which is composed of states and territories. The District of Columbia, or the territory west of the Missouri, is not less within the United States than Maryland or Pennsylvania, and it is not less necessary, on the principles of our Constitution, that uniformity in the imposition of imposts, duties, and excises should be observed in the one than in the other.

The rule of uniformity is supposed to operate equally in both the territories as well as the states and so the Territory Clause does not permit the Uniformity Clause to be violated. The only reason that Puerto Rico has been excluded from these rules is

18

because of its status as an "unincorporated" Territory, which means it is, "not part of the United States within the revenue clauses of the Constitution." *See Downes.* The Territory Clause is not relevant here, but if it were relevant, it would be challenged. The flawed theory of "unincorporated" Territories is relevant here and has permitted the unconstitutional violation of the Uniformity Clause when collecting the Federal Income Tax. This flawed theory no longer applies to Puerto Rico because it is now an "incorporated" Territory and is fully subject to the Uniformity Clause when collecting income taxes.

Mr. Swanson believes that *United States v. Vaello Madero*, 596 U.S. __ (2022), and Justice Gorsuch's concurring opinion, open the door to challenge Puerto Rico's status as an unincorporated Territory. He was inspired to challenge Puerto Rico's status as an unincorporated Territory by Justice Gorsuch's concurring opinion and believes that he is acting in good faith on the written opinion of the Supreme Court. This is a ripe controversy and should not be summarily ignored because of the gross injustice created by permitting some American Citizens to evade the income tax by fleeing to Puerto Rico.

In *Moore et ux v. United States*, 144 S. Ct. 1680 (2024), the Supreme Court finally laid to rest the dispute surrounding the nature of the income tax and clarified by which rule the tax must be collected. The Court held that the income tax is an indirect tax, which is subject to the rule of uniformity. In his motion for

19

summary affirmance, the Commissioner attempts to write off this holding as mere dicta, perhaps implying that this Court may disregard this clear and unambiguous analysis. The holding is reproduced at length:

> *Held*: The MRT—which attributes the realized and undistributed income of an American-controlled foreign corporation to the entity's American shareholders, and then taxes the American shareholders on their portions of that income—does not exceed Congress's constitutional authority. Pp. 5–24.
>
> (a) Article I of the Constitution affords Congress broad power to lay and collect taxes. That power includes direct taxes—those imposed on persons or property—and indirect taxes—those imposed on activities or transactions. Direct taxes must be apportioned among the States according to each State's population, **while indirect taxes are permitted without apportionment but must "be uniform throughout the United States," §8, cl. 1. Taxes on income are indirect taxes, and the Sixteenth Amendment confirms that taxes on income need not be apportioned. Pp. 5–7**.

**(Emphasis added)**

The Moores claimed that MRT violated the Direct Tax Clause of the Constitution. The "dicta" cited by the Commissioner begins by stating, "To analyze this question, we being with a brief review of Congress's taxing power under the Constitution," (*Moore*, 144 S.Ct. at 1687) indicating that this analysis is necessary to resolve the question presented. To resolve this question, the Court had to distinguish between the rules for direct taxes and the rules for indirect taxes. By concluding that income taxes are indirect taxes, it was held that MRT cannot violate the Direct Tax Clause

20

of the Constitution. Thus, the Court's holding that income taxes are indirect taxes subject to uniformity is not dicta.

The Commissioner asserts that *Moore* "does not mention, much less overrule, its earlier decision in Knowlton, and its specific holding that 'the qualification of uniformity is imposed, not upon all taxes which the Constitution authorizes, but only on duties, imposts and excises.'" (Motion at 15) *Moore* does not overrule Knowlton, it expands it. *Knowlton* was decided in 1900, and after the Sixteenth Amendment in 1913, income taxes are added to the category of taxes requiring uniformity:

> By contrast, *indirect* taxes are the familiar federal taxes imposed on activities or transactions. **That category of taxes includes duties, imposts, and excise taxes, as well as income taxes. _U. S. Const., Art. I, §8, cl. 1; Amdt. 16_**. Under the Constitution, indirect taxes must "be uniform throughout the United States." Art. I, §8, cl. 1. A " 'tax is uniform when it operates with the same force and effect in every place where the subject of it is found.' " *United States* v. *Ptasynski*, <u>462 U.S. 74</u>, 82 (1983).
>
> **(Emphasis added)**

*Moore* explains that the Sixteenth Amendment expands the category of indirect taxes to include: duties, imposts, excises *and income taxes*. If income taxes are collected "without apportionment" then they must be collected "with uniformity" and thus, they must be numbered with the other taxes collected with uniformity. The Commissioner still maintains that, "it is not at all clear, even despite the dicta in Moore, that the Uniformity Clause applies to income taxes."

21

The same "dicta" states that income taxes need not be apportioned so do neither the rules of apportionment nor uniformity apply to income taxes? The Commissioner refuses to explain the absurd conclusion.

Mr. Swanson's fundamental belief is that all American citizens must be taxed uniformly in the collection of the income tax. It is a sore injustice that public schoolteachers in Georgia must pay the income tax while public schoolteachers in Puerto Rico do not. To add insult to injury, wealthy American citizens may flee to Puerto Rico specifically to evade the income tax. This injustice must be corrected. This case presents a ripe constitutional and legal controversy has never been decided and is not frivolous. Summary affirmance should be denied.

**CONCLUSION**

Mr. Swanson is entitled to pay the legally correct amount of tax: *no more no less.* The Commissioner's computation of Mr. Swanson's income tax deficiency in the amount of $15,648 is incorrect as a matter of law because the dollar figure needed to compute the deficiency has not been determined. In addition, Puerto Rico's incorporation disrupts the uniformity of the income tax. The Commissioner's position is not clearly right as a matter of law, and there are substantial questions as to the outcome of this case. First, both the Notice of Deficiency and the income tax are void for want of uniformity. Alternately, the

22

Notice of Deficiency must be remanded back to the Tax Court to recompute the deficiency in accordance with the income tax statutes in Subtitle A. Summary affirmance is inappropriate because the Tax Court has admitted to a possible error on the NOD.

WHEREFORE, Appellant Brian D. Swanson, respectfully requests that the Commissioner's motion for summary affirmance be denied.

Dated: July 25, 2024                    Respectfully Submitted,

BRIAN D. SWANSON
Appellant, pro se
1805 Prince George Ave
Evans, Ga 30809
(831)601-0116
swansons6@hotmail.com

23

## CERTIFICATE OF COMPLIANCE

This is to certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A).  This motion is submitted in 14-point Times New Roman font, and it contains 5,170 words.

24

## CERTIFICATE OF SERVICE

I Hereby certify that on this 25st day of July, 2024, a copy of this motion was served on the following individuals by United States Postal Service:

Marjorie A. Rollinson
Chief Counsel
Internal Revenue Service
1111 Constitution Ave, NW
Washington, DC 20224

Paul A. Allulis
Internal Revenue Service
US DOJ, Tax Div, Appellate Section
P.O. Box 502
Washington, D.C. 20044

BRIAN D. SWANSON
Appellant, pro se

25